# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALFRED ALONZO MAYO.,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 3:14-CV-00417** |
| | : | |
| **vs.** | : | **(Petition Filed 3/6/2014)** |
| | : | |
| **JEROME WALSH, ET AL.,** | : | **(Judge Caputo)** |
| | : | |
| **Respondents** | : | |

## MEMORANDUM

On March 6, 2014, Petitioner, Alfred Alonzo Mayo, an inmate confined at the State Correctional Institution, Dallas, Pennsylvania, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

On August 22, 2008, Mayo was arrested by the Pottsville Bureau of Police and charged with the following four crimes: (1) delivery of a controlled substance (cocaine); (2) possession with intent to deliver a controlled substance (cocaine); (3) possession of a controlled substance (cocaine); and (4) criminal use of communication facility. Doc. 22, Petitioner's Brief at 9-10; Doc. 18-3, Respondents' Exhibit B at 2, 19-21 and 109-110; Respondents' Exhibit C at 2-15 . The charges arose out of a controlled purchase of cocaine from Mayo by Patricia Hook, a confidential informant, on August 16, 2008. Id.   On August 27, 2008, Mayo was arrested by the Pottsville Bureau of Police and charged with the same four crimes. Id. The charges arose out of a controlled purchase of cocaine from Mayo by Basil Reaves, a confidential informant, on July 5, 2008. Id.   The two cases were consolidated for purposes of trial.  Id.   After a two day jury trial in the Court of Common Pleas of Schuylkill County, Pennsylvania,   Mayo was found guilty on March 2, 2010,  of all

of the charges. Id.  On May 17, 2010, Mayo was sentenced by the Court of Common Pleas of Schuylkill County to an aggregate term of imprisonment 6 to 12 years to be served in a state correctional institution consecutively to any sentence he was presently serving.[1] Id.

Mayo argues that (1) the trial court improperly admitted hearsay evidence ( i.e., Hook, the confidential informant who Mayo sold cocaine to on August 16, 2008, was unavailable at the time of trial and portions of her prior testimony were read to the jury); (2) trial counsel was ineffective for failing to move that the portions of the prior testimony of Hook be redacted where Hook testified that Mayo was responsible for the death of one of Hook's sisters; (3) trial counsel was ineffective for failing to object to the trial court's instruction to Mayo that a prior conviction for possessing an instrument of a crime was a crime of dishonesty and false statement (crimen falsi) and could be used to impeach him, and, consequently, Mayo claims this erroneous advice deterred him from testifying and interfered with his constitutional right to testify on his own behalf; and (4) trial counsel was ineffective for failing to object to the testimony of a police officer, Corporal Dennis Wiederhold, who was not disclosed and identified as a potential witness prior to trial.

In accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999) and Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), the Court issued formal notice to Mayo that he could either have the petition ruled on as filed, that is, as a § 2254 petition for writ of habeas corpus and heard as such, but lose his ability to file a second or successive petition,

---

[1] Mayo will not commence serving this aggregate sentence until on or about March 14, 2016.  Doc. 18-2, Respondents' Exhibit B at 2; Mayo v. Pennsylvania Board of Probation & Parole, Civil No. 13-1453, slip op. at 7 (M.D.Pa. December 1, 2014). Mayo is presently serving an aggregate state court sentence of 6 to 20 years for various offenses, including Robbery.

absent certification by the court of appeals, or withdraw his petition and file one all-inclusive § 2254 petition within the one-year statutory period prescribed by the Antiterrorism Effective Death Penalty Act. Doc. 12.  On June 26, 2014, in response to the Notice, Mayo elected to have the court rule on his petition as filed. Doc. 14.  By Order dated June 30, 2014, the Court directed respondents to file an answer to Mayo's petition and a brief in support of their answer. Doc.15.  A response with attached exhibits and a brief were filed by the Schuylkill County District Attorney on July 18, 2014.  Docs. 18 and 19. The matter became ripe for disposition on September 9, 2014,  when Mayo filed a traverse. Doc. 22.

For the reasons that follow, the Court will deny Mayo's petition.

**Background**

The essential facts giving rise to the charges against Mayo which were developed at trial and revealed in the exhibits filed by the District Attorney and the traverse filed by Mayo are as follows.

On July 5, 2008, Sergeant John Morrow of the Pottsville Police Department was contacted by Captain Richard Wojciechowsky, the supervisor of the Pottsville Bureau of Police Narcotics Unit. Doc. 18-1, Respondents' Exhibit A at 41; Doc. 18-2, Respondents' Exhibit B at 11-12; Doc. 18-3, Respondents' Exhibit C at 15.  Captain Wojciechowsky requested that Sergeant Morrow contact Patricia Hook regarding setting up a controlled buy of cocaine from Mayo. Id. Subsequently, Sergeant Morrow along with two other law enforcement officers met with Hook and searched her for money and other contraband with none being found and then had her place a telephone call to Mayo. Id.  Mayo agreed to meet with Hook to deliver $100 worth of cocaine. Id. Hook was then given $100 in marked bills by the police officers for the purpose of making the purchase of cocaine from Mayo. Id.

3

The police set up surveillance of the location, a parking lot of a local Giant supermarket, where Hook and Mayo agreed to meet. Id. Mayo arrived at the location in a green Ford van. Id. Hook was driven to the location by an undercover police officer who observed Hook get out of the vehicle and enter Mayo's van. Id. Mayo was identified by the police officers as the driver and no other passengers were seen in the van. Id. Sergeant Morrow then observed Mayo drive the van around the block and return to the parking lot. Id. At no time did Hook have contact with anyone other than the police officers and Mayo. Id. Mayo and Hook were kept under constant surveillance. Id. Hook emerged from the van and returned directly to the vehicle where the undercover officer was located and gave the undercover officer the cocaine. Id. Hook then reported that she gave Mayo the $100 in exchange for the cocaine. Id. Hook and the undercover police officer returned to the police station where it was once again determined that Hook had no other drugs or money in her possession. Id.

On August 16, 2008, Captain Wojciechowsky was informed by Corporal Dennis Wiederhold that Basil Reaves, a confidential informant, had the opportunity to purchase crack cocaine from Mayo. Doc. 18-2, Respondents' Exhibit B at 11-12; Doc. 18-3, Respondents' Exhibit C at 9; Doc. 22, Petitioner's Traverse at 21-23. At about 10:30 a.m. Reaves contacted Captain Wojciechowsky and reported that Mayo had "just called" him and that Reaves could now purchase cocaine from him. Id. Captain Wojciechowsky met with Reaves at 10:55 a.m. and completed a search of Reaves for any money, weapons or contraband with none being found. Id. Reaves was provided with $100 in marked bills and a telephone call was placed to Mayo. Id. Reaves and Mayo agreed to meet at Reaves's residence. Id. At about 11:10 a.m. while Captain Wojciechowsky was on the phone with Reaves and at the same time keeping him under surveillance, Reaves reported that Mayo

was approaching in his vehicle. Id.  Captain Wojciechowsky observed a black male arrive in a Dodge Durango, a vehicle which Captain Wojciechowsky indicated was identical to one Mayo was known to drive. Id.  Captain Wojciechowsky observed Reaves approach the vehicle on the operator's side front window and speak with the driver. Id.  After about two minutes the vehicle drove off and as it was driving off it passed directly next to Captain Wojceichowsky and he was able to identify Mayo and obtain the license plate number of the vehicle, GZZ4337. Id.  Captain Wojceichowsky then met with Reaves at which time Reaves turned over four ziplock packets containing a white substance that was subsequently tested and determined to be cocaine. Id.  A search of Reaves revealed no money or other contraband. Id.  Reaves reported that Mayo had arrived alone in the vehicle and handed the ziplock bags to him in exchange for the $100. Id.  A vehicle records search using the license number GZZ4337 revealed that the Durango was registered in the name of Mayo and Melissa Jean Hines. Id.  In addition to the testimony of Captain Wojciechowsky and Reaves, Corporal Wiederhold testified that he observed Mayo operating the Dodge Durango at or about the time Reaves purchased cocaine from Mayo. Id.  Corporal Wiederhold testified he "observed Reaves leave his porch and approach the driver's side window of the vehicle" at which point an exhange took place after which Reaves returned to the porch and Mayo's vehicle drove away. Id.

In each of the above-mentioned drugs transactions cash was exchanged for cocaine.  Prior to the transactions Reaves and Hook were searched and were found not be in possession of any drugs, including cocaine.  Reaves and Hooks were each provided with $100 in marked bills.  Following the transactions, Reaves and Hook met with members of the Pottsville Bureau of Police and provided the police with cocaine. Reaves and Hook were

also searched a second time and it was determined they were not in possession of any cash.  The alleged cocaine was tested in a laboratory and, after the testing confirmed that the substance delivered on both occasions was cocaine, charges were filed against Mayo.

As stated above a two day trial occurred in March, 2008, and Mayo was found guilty of all of the charges.  Hook did not appear at the trial and her prior testimony given at a pretrial hearing was read to the jury pursuant to Pennsylvania Rule of Evidence 804(b)(1). The testimony which was read to the jury included a portion where Hook stated that Mayo had sold drugs to one of her sisters which was instrumental in that sister's death.

On direct appeal to the Superior Court of Pennsylvania, Mayo presented several issues but the only issue raised on direct appeal which is part of the present habeas petition is that the trial court erred when it permitted the prior testimony of Hook to be read to the jury. The Superior Court determined that the admission of that testimony by the trial court  was appropriate under Pennsylvania Rule of Evidence 804(b)(1).  The Superior Court stated in relevant part as follows:

> Trial began on March 1, 2010. After the jury was sworn in, the Commonwealth discovered that Hook[] was unavailable to testify. Although she had been subpoenaed to trial, she had checked herself into the psychiatric wing of the local hospital. The Commonwealth sought to have Hook[] declared unavailable and to have her prior testimony read into evidence in lieu of live testimony. Mayo objected claiming it had not been demonstrated she was actually unavailable, that her prior testimony violated the Confrontation Clause of both the U.S. and Pennsylvania Constitutions. . . . The trial court . . . allowed the Commonwealth to use the prior recorded testimony.  Mayo was also permitted to introduce evidence that contradicted Hook['s] testimony.
>
> . . . Mayo claims Hook[] was improperly declared unavailable, rendering her previously recorded testimony inadmissible hearsay, that he was not afforded the opportunity to fully cross-examine Hook[], and as a result, reading Hook['s] prior testimony violated his rights under both the U.S. and Pennsylvania Constitutions to confront his accusers.

6

The law is clear that when addressing testimonial evidence, as is at issue here, an out-of-court statement must not only fit an exception to the hearsay rule, but also cannot violate the Confrontation Clause. See generally Commonwealth v. Leak,___A.3d___, 2011 PA Super 58 (March 23, 2011); Commonwealth v. Abrue, 11 A.3d 484 (Pa. Super. 2010).

Pennsylvania Rule of Evidence 804(b)(1) exempts from hearsay, if the declarant is unavailable:

> [t]estimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an adequate opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Pa.R.E. 804(b)(1).

Rule 804 also provides two relevant definitions of unavailability. A witness is unavailable if that person is unable to be present due to a then existing physical or mental illness or infirmity, or if the proponent is unable to procure the declarant's attendance by process or other reasonable means. See Pa.R.E. 804(a)(4), (5).[2]

---

[2]Federal Rule of Evidence 804(b) is worded similarly. It states in relevant part as follows:

> (b) The Exceptions. The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:

> (2) Former Testimony. Testimony that:

> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and (B) is now offered against a party who had – or, in a civil case, whose predecessor in interest had – an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Unavailability under the Federal Rule includes (1) absence of the declarant as the result of mental or physical illness or (2) absence of the declarant at trial and the proponent of the statements has not been able to procure by process or other reasonable means the declarants attendance at trial.

Although there is no precise definition of what a full and fair opportunity to cross-examine entails, at a minimum the defendant must possess "vital impeachment evidence" for the opportunity to cross-examine the witness to have meaning.

The United States Supreme Court set forth the rule for the admission of out-of-court testimonial evidence in Crawford v. Washington, 541 U.S. 36 (2004). Such out-of-court statements are inadmissible as violative of the Confrontation Clause unless "(1) the witness is unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness." Abrue, 11 A. 3d at 488, citing Crawford. In essence, if a statement is admissible under Pennsylvania Rule of Evidence 804(b)(1) regarding the former testimony hearsay exception, then it will also pass Constitutional scrutiny.

With these rules and definitions in mind, we now review the trial court's determination.

On the day of trial, after having been issued and served a subpoena to appear to give testimony, and having been personally informed by the prosecuting attorney that she would be required to appear on March 1, 2010, Patricia Hook[] could not be located. The police departments of two jurisdictions, the City of Pottsville and Minersville, both attempted to locate Hook[]. On March 1, 2010, Pottsville police officer John Morrow testified he went to Hook['s] residence twice the day before, but Hook[] was not there. Mail and a parcel left at the residence indicated also that Hook[] had not been home. Officer Morrow contacted Minersville police who informed him there had been an incident sometime the prior weekend in which it appeared Hook[] had tried to harm herself, and therefore, she had been hospitalized in the psychiatric ward of Pottsville Hospital. Due to privacy regulations, Officer Morrow could not confirm Hook['s] status as a patient. Officer Morrow further testified to leaving multiple phone messages and speaking to neighbors, in addition to his contact with the Minersville police, attempting to locate Hook[].

*       *       *       *       *       *       *

Detective Terry Noll testified he had personally served the subpoena requiring Hook[] to appear to testify.

*       *       *       *       *       *       *

The trial judge believed the Commonwealth had demonstrated Hook[] was a psychiatric patient at the Pottsville Hospital. In addition, the trial judge found that Hook[] had been served with a subpoena and was aware of the date she was required to appear. Further, he determined the police had demonstrated a good faith effort to locate and procure Hook['s] testimony, but

> were unable to do so.  As a result the trial court determined Hook[] was an unavailable witness.

Document 18-1, Respondent's Exhibit A at 42-46.  The Superior Court concluded that the trial court did not err in its ruling.  Id. at 46.  It further rejected Mayo's claim that he did not have a full and fair opportunity to cross-examine Hook at the prior proceeding.  Id. at 47.  The Superior Court stated in relevant part as follows:

> Mayo's argument is unavailing. In his brief, Mayo claims Hook was evasive in answering questions on cross-examination. Mayo cites no case law, and we know of none, that equates equivocal answers with the opportunity to fully and fairly conduct cross-examination. Rather, the rule requires the defendant to have the relevant information needed to conduct a meaningful cross-examination and the same motive in developing the testimony.

> Here, although Mayo complained at trial that he was unaware of the disposition of two cases against Hook[] at the time of the motion to suppress, on appeal, he does not claim that he was lacking any substantive information regarding Hook[]. Additionally, in both the motion to suppress and at trial, Mayo had the same motive to develop and challenge Hook['s] testimony. In both instances, he sought to challenge her credibility and highlight the personal prejudices she harbored against Mayo. Mayo attacked Hook['s] credibility at the suppression hearing, brought out reasons for prejudice against Mayo, and favorable treatment Hook[] might have expected from the Commonwealth due to her cooperation. Mayo points to no information or line of questioning he was unable to pursue at the suppression hearing that he could have developed at trial. Based on the foregoing, we find no error in the trial court's determination that Mayo was afforded an adequate opportunity to conduct a full and fair examination of Hook[].

Id. at 47-48.  Mayo did not file a petition for allowance of appeal with the Supreme Court of Pennsylvania.

On September 27, 2011, Mayo filed a petition under Pennsylvania's Post Conviction Relief Act (PCRA). Doc. 18-2, Respondents' Exhibit B at 2-9.  Mayo was represented by counsel during the post-conviction proceedings and raised 15 issues, including 13 claims that trial counsel was ineffective. Id.   In the present habeas petition

Mayo only raises two of the claims of ineffective assistance of counsel which were raised in

state court: (1) trial counsel failed to properly advise him of his right to testify, and (2) trial

counsel failed to request a redaction of Hook's testimony to eliminate the statement by Hook

that Mayo was responsible for a sister's death.   The trial court in rejecting the first claim of

ineffective assistance of counsel stated in relevant part as follows:

> A review of the transcripts leads to the conclusion that it was trial counsel trial
> strategy not to have [Mayo] testify, and indeed [Mayo] agreed with this
> strategy. (381 TT). [Mayo] and trial counsel agreed it was in the best
> interest of [Mayo] not to take the witness stand before any discussion
> was had with the court and counsel with regard to [Mayo's] prior criminal
> record. The Court entertained this discussion before lunch after the conclusion
> of the Commonwealth's case out of the hearing of the jury so that we were
> aware of how the trial would proceed after lunch recess particularly if [Mayo]
> was going to testify and present any witnesses.  We discussed the
> possibility that the May 1, 2006 conviction for possession of instruments of
> crime in Montgomery County was a crime of crimen falsi subject to disclosure
> by the District Attorney on cross examination in the event that [Mayo]
> decided to take the witness stand, but it was not discussed as the Court's final
> ruling on this evidentiary issue.  It was extraneous to trial counsel's advice to
> [Mayo] not to testify.  Defense counsel stated: "I did advise him that if he
> takes the stand, he runs the risk if he makes a statement and opens a door,
> whether it's the one case or both, that I can't help if that happens.  And I did
> advise him in my opinion that he runs that risk." (382 TT) This Court then
> stated that the *crimen falsi* issue should be reviewed over lunch and discussed
> after lunch.  The discussion concluded with the Court stating that it "would be
> up to the District Attorney's office to prove that, we'll, take a look at it over
> lunch. Let's go to lunch, and then we'll return here at say 1:30.  Keep the
> jury down there and then until we go over this again." (387 TT) [Mayo]
> stated: "Your Honor, I don't want to testify."  The Court then stated: "It's up to
> you. Talk it over with your lawyer.  Grab a bite to eat, stretch your legs, relax
> and we'll take it from there. All right. Thank you very much. Court will stand in
> adjournment until that time."  A lunch recess was taken from 12:13 p.m. until
> 1:35 p.m. when the Court inquired" "Have you had a chance to confer with
> your client, Mr. Zelonis, about whether or not he wants to testify? Mr. Zelonis:
> He does not.  He will not.  He does not want to testify."  The case then
> proceeded with [Mayo's] witnesses.  Hindsight as to [Mayo's] rationale not to
> testify may be gleaned from the trial transcript as cited especially the testimony
> of [Mayo's] trial counsel.  In retrospect, there is arguable merit to [Mayo's]
> claim.  However, [Mayo] decided not to testify even before the Court was able
> to conduct a hearing on the issue if it were to be pursued by the District

Attorney's Office after the lunch break.  A review of the record indicates that [Mayo] knew exactly what he was doing hoping to construe the preliminary remarks made during the discussion prior to the defense presenting its case and after the conclusion of the Commonwealth's case so that [Mayo] would be in the position to have the best of both worlds: not testify and if convicted argue that after he has been convicted that he is entitled to a new trial because he did not testify relying upon incorrect statements by counsel and the Court.   Indeed, review of defense counsel's comments about his discussion with [Mayo] concerning his right to testify are replete with trial counsel's recommendation that he not testify as there was a significant chance that the jury would not accept the Commonwealth's proofs because the confidential informant testimony was perceived as weak by defense counsel coupled with the anticipated testimony of the two defense witnesses.  Therefore, the Court concluded that the argument fails for [Mayo's] decision to not testify did not undermine the truth determining process to the point that one can conclude no reliable adjudication of guilt or innocence would have been taken place, and [Mayo] accepted counsel's well-reasoned defense strategy.

Id. at 24-26.   The trial court in rejecting the second claim stated in pertinent part as follows:

The fourteenth complaint "Trial counsel's failure to request the redaction at trial of confidential informant Hook's [pretrial hearing] testimony as to alleged criminal activity by [Mayo]" has merit, but the Court gave a curative instruction which appears at 374 TT. [Mayo] suffered no actual prejudice because of [] this Court's curative instruction.  There is no reasonable probability that the result in the proceeding would have been different given the Court's curative instruction. Commonwealth v. Miller, 987 A.2d 638, 648 (Pa. 2009).

Id. at 30.     Mayo raised both of these issues on appeal to the Superior Court and the

Superior Court agreed with the trial court's resolution of those two issues. Id. at 112-113 and

116-117.  As for the first issue the Superior Court stated as follows:

[Mayo] first claims his trial counsel was ineffective in improperly advising [Mayo] that one or more of [Mayo's] prior convictions could be used to impeach him if he testified at trial.  According to [Mayo], the conviction(s) could not be used in that fashion because it or they were not crimen falsi.  [Mayo's] point is that he chose not to testify based on the allegedly improper advice about his criminal record and its potential evidentiary uses.

After considering parts of the trial transcript in which [Mayo], his counsel and the court discussed [Mayo's] right to testify, the PCRA court simply did

11

not believe [Mayo's] PCRA testimony as to the reason he chose not to testify (i.e., counsel's advice about the potential evidentiary uses of [Mayo's] record).  In this regard, the court essentially reasoned that, although trial counsel may have initially given inaccurate advice about the possible uses of [Mayo's] record, any such advice was not material to [Mayo's] choice.  More particularly, the court found that trial counsel advised [Mayo] not to testify at trial because counsel's strategy was to rely both on upcoming defense witnesses and on what counsel believed were weaknesses in the Commonwealth's proof (e.g., weak testimony of one or both informants).  The court also found this strategy to have been reasonable.  Additionally, the court further determined that [Mayo], when deciding not to testify, accepted and agreed with counsel's aforesaid strategy and did not make his decision because of any advice, even if improper, concerning his criminal history.  Based on the foregoing reasons, the PCRA court concluded [Mayo] had not proven trial counsel was ineffective.

[Mayo] has not shown us that the court's credibility and factual determinations regarding his reason for not testifying were unsupported by the record.  We will not disturb those determinations

Id. at 112-113.  As for the second issue the Superior Court stated in relevant part as follows:

[Mayo] also argues counsel should have objected at the [pretrial] hearing to testimony from Hook regarding [Mayo's] criminal activity in unrelated cases.   Furthermore, [Mayo] claims that, at trial, counsel should have moved to redact Hook's testimony regarding [Mayo's] criminal acts before that testimony was read into the record.  The [pretrial hearing] testimony was admitted at trial because the court declared Hook unavailable.

The PCRA court found some merit to [Mayo's] arguments regarding counsel's performance with respect to Hook's testimony.  However, the court reasoned that [Mayo] had not suffered prejudice.  On this point, the court observed that it issued a limiting instruction to the jury concerning use of Hook's prior testimony.

Appellant does not critique the PCRA court's reasoning. He does not develop an argument analyzing the overall trial evidence, Hook's [pretrial hearing] testimony and the court's limiting instruction in order to demonstrate that the outcome of the proceedings would have likely been different absent counsel's complained-of conduct.  Having not shown prejudice, [Mayo] has not given us cause to disturb the PCRA court's decision.

Id. at 116-117.  Mayo filed a petition for allowance of appeal with the Pennsylvania Supreme

Court in which Mayo raised three issues but only one of those issues is presently before us.

12

Id. at 123-132.   In the petition for allowance of appeal Mayo claimed that the trial court and the Superior Court erred in concluding that his trial counsel was not ineffective with respect to the advice counsel gave him regarding his right to testify and the use of his prior criminal record. Id. The Pennsylvania Supreme Court denied Mayo's petition for allowance of appeal on January 28, 2014. Id. at 164.

The third claim of ineffective assistance of counsel raised in the present habeas petition, i.e., trial counsel was ineffective  for failing to object to the testimony of a police officer, Corporal Dennis Wiederhold,  who was not disclosed and identified as a potential witness prior to trial, was not raised in any state court proceeding.

## Standards of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.  Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-8 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-8 (1991); see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson vs. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

## A.  Exhaustion

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant.

13

See 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.  See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999).  Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351 (1989).  Fair presentation requires the petitioner to raise the claim in a procedural context in which the state courts can consider it on the merits.  Id.   In Pennsylvania, the requirement of "fair presentation" means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Court of Common Pleas and then to the Superior Court either on direct or PCRA appeal. See, e.g., Lambert v. Blackwell, 387 F.3d 210, 231-234 (3d Cir.2004).[3]

**B**.  **Procedural Default**

If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted.  Wenger v. Frank, 266 F.3d 218, 223 (3d Cir.

---

[3]In 2000 the Pennsylvania Supreme Court issued an administrative order ("Order 218")  which relieves a state prisoner of filing with the Supreme Court a direct appeal of a criminal case or in a PCRA proceeding in order to exhaust state court remedies for purposes of federal habeas review. In Lambert, the Court of Appeals for this circuit held that Order 218 was sufficient to render discretionary review before the Pennsylvania Supreme Court "unavailable."

2001);  see Teague v. Lane, 489 U.S. 288, 297-98 (1989).   Although deemed exhausted, such claims are considered procedurally defaulted.  Coleman v. Thompson, 501 U.S. 722, 749 (1991); Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000), cert. denied, 531 U.S. 1082 (2001).

A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims.  See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992).  To demonstrate cause for a procedural default, the petitioner must show that some objective external factor impeded petitioner's efforts to comply with the state's procedural rule.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).  In Coleman, the Supreme Court held that ineffective assistance of counsel on collateral review does not constitute cause to excuse a procedural default.  Coleman, 501 U.S. at 753-754.  However, the Supreme Court in Martinez v. Ryan, 132 S.Ct. 1309 (2012) recognized an exception to its holding in Coleman.  Martinez, 132 S.Ct.  at 1315.   Specifically, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  Id.   To demonstrate actual prejudice, the petitioner must show "not merely that the errors created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions."  See United States v. Frady, 456 U.S. 152, 170 (1982).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of

justice.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000);  Wenger, 266 at 224.  The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  Murray, 477 U.S. at 496.

## C.  Merits

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome."  Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999).  Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent."  Id.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct.  A petitioner may only rebut this presumption

with clear and convincing evidence of the state court's error. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions) <u>Matteo</u>, 171 F.3d at 888; <u>Thomas v. Varner</u>, 428 F.3d 492, 497-98 (3d Cir. 2005).  This presumption of correctness applies to both explicit and implicit findings of fact. <u>Campbell v. Vaughn</u>, 209 F.3d 280, 286 (3d Cir. 2000).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." <u>Mastracchio v. Vose</u>, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record.  28 U.S.C. § 2254(d)(2); <u>Porter v. Horn</u>, 276 F. Supp 2d 278, 296 (E.D. Pa. 2003); <u>see</u> <u>also</u> <u>Torres v. Prunty</u>, 223 F.3d 1103, 1107-08 (9th Cir. 2000); <u>cf</u>. <u>Jackson v. Virginia</u>, 443 U.S. 307, 316 (1979).  "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." <u>Breighner v. Chesney</u>, 301 F. Supp 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[4]).  Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. <u>Porter</u>, 276 F. Supp 2d at 296; <u>see</u> <u>also</u> <u>Williams v. Taylor</u>, 529

---

[4]"If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination."  28 U.S.C. § 2254(f).

U.S. 362, 408-09 (2000); <u>Hurtado v. Tucker</u>, 245 F.3d 7, 16 (1st Cir. 2001).  Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination.  <u>Porter</u>, 276 F. Supp 2d at 296; <u>see</u> <u>also</u> <u>Williams</u>, 529 U.S. at 408-09.

## **Discussion**

There is an initial question regarding which issues are properly before this court.  The District Attorney argues that Mayo failed to exhaust three of the four claims raised.  Specifically, the District Attorney claims that Mayo did not exhaust his first claim relating to the use of Hook's prior testimony; the second claim relating to the failure to redact Hook's testimony; and the fourth claim relating to the presentation of testimony from Corporal Wiederhold at the time of trial.  The District Attorney admits that the third claim relating to the alleged ineffective assistance of counsel in advising Mayo regarding the admissibility of his prior criminal record was exhausted in state court.

Because Mayo's first and second claims were presented to the Superior Court those claims have been exhausted and are properly before this court for a merits review. <u>Lambert</u>, 387 F.3d at 231-234.   The court will address Mayo's claims  *seriatim*.

Mayo contends that his Sixth Amendment right to confront a witness was violated when the trial court allowed the prosecution to read Hook's prior testimony into evidence during the trial.  This claim is unavailing in light of <u>Crawford</u>. The Confrontation Clause of the Sixth Amendment establishes the right of a criminal defendant "to be confronted with the witnesses against him."  U.S. Const. amend VI.   This right, however, does not preclude the use of prior testimony of a witness if the witness was unavailable at

the time of trial and the criminal defendant had a prior opportunity to cross-examine the witness. Crawford, 541 U.S. at 53-54. Mayo does not dispute that the trial court heard testimony as outlined above regarding the prosecution's efforts to obtain Hook's presence at trial. The trial court accepted that testimony and the Superior Court found the testimony adequate to establish that Hook was unavailable under Rule 804 of the Pennsylvania Rules of Evidence. The requirements of Rule 804 are completely in accord with Crawford. The state trial court and Superior Court found that Hook was unavailable and that Mayo had an adequate opportunity in a prior proceeding to cross-examine Hook. Mayo has failed to show that the decision of the state trial court and Pennsylvania Superior Court on the merits with regard to the admission of Hook's prior testimony was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States or that the trial court's ruling resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, this court finds that Mayo's claim that he was denied a fair trial by the admission of that testimony is without merit.

Mayo's next two claims which were presented in the state court proceedings are based on trial counsel's alleged ineffective assistance. In Strickland v. Washington, 466 U.S. 668, 688,(1984), the United States Supreme Court held that to prove a constitutional violation for ineffective assistance of counsel, a habeas petitioner must meet a two-pronged test. The petitioner must show "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." Id. at 687; accord Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir.1994).

To demonstrate deficient performance, a petitioner must show that "counsel's performance fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; accord Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir.2001). A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; accord Jermyn, 266 F.3d at 282; Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir.1996). If, under the circumstances, counsel's actions might be considered sound trial strategy, the presumption is not rebutted, Strickland, 466 U.S. at 689, because "substantial deference is to be accorded counsel's tactical decisions." United States v. Wiener, 127 F.Supp.2d 645, 648 (M.D.Pa.2001). A decision supported by "reasonable professional judgment does not constitute ineffective assistance of counsel. See Burger v. Kemp, 483 U.S. 776, 794, (1987). It follows that counsel cannot be deemed ineffective for pursuing a meritless claim. Hartey v. Vaughn, 186 F.3d 367, 372 (3d Cir.1999).

A petitioner satisfies the second prong and shows prejudice when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; accord Frey v. Fulcomer, 974 F.2d 348, 358 (3d Cir.1992). "Without proof of both deficient performance and prejudice to the defense ... it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction should stand." Bell, 535 U.S. at 695 (internal quotations and citation omitted). In assessing whether the result of the proceeding might have been

20

different, a reviewing court must consider the "totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695; Jermyn, 266 F.3d at 283.  However, "a court can choose to address the prejudice prong before the ineffectiveness prong and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 445 F.3d 671, 678 (3d. Cir. 2006).  "The object of an ineffective assistance claim is not to grade counsel's performance.  If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

At the time the state court reviewed the claims raised by Mayo, Strickland's familiar two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims. Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in substance, identical to the Strickland test.  See, e.g., Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa.1987). The Third Circuit Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland.  Jacobs v. Horn, 395 F.3d 92, 107 n. 9 (3d Cir.2005); Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir.2000). Thus, under § 2254(d)(1), the relevant inquiry in addressing an ineffectiveness claim that has been adjudicated on the merits is whether the Pennsylvania's Supreme Court's decision involved an unreasonable application of Strickland. Jacobs, 395 F.3d at 107 n. 9; Werts, 228 F.3d at 204.

Mayo contends that trial counsel was ineffective for failing to move for the redaction of Hook's testimony which was read to the jury.  Specifically, he contends that

portions of that testimony indicating that Mayo was responsible for the death of one of

Hook's sisters should have been stricken from the transcript before it was read to the jury.

Mayo does not dispute the fact that his attorney at the post-conviction proceeding testified

that it was his trial strategy to show that Hook had a bias against Mayo and that reading that

portion of the testimony was part of that strategy.  Document 18-2, Respondents' Exhibit B

at 76.  Counsel for Mayo testified as follows:

> Q.  . . . And my original question which precipitated the recess was did you
> object to the reference at trial to prior criminal activity by my, by Mr. Mayo?
>
> A.  I don't recall.  If I did, it would have been prior to me reading anything
> into the record or anybody else reading things into the record.  But with
> that said, it was part of our defense strategy to show bias, that Mrs., Ms.
> Hook had a hate for Mr. Mayo to such a degree we felt she was a tainted
> witness and not trustworthy or credible.
>
> Q.  Okay.  So that was your defense strategy, was to attack – well, you really
> didn't get a chance to attack her because you had to read it at trial – but to
> attack Hook's testimony as being tainted by saying that her belief that your
> client had committed prior criminal activity?
>
> A.  My client somehow is responsible for a person dying in her family.
>
> Q.  And to you knowledge, was that belief true?
>
> A.  No. Well, I have no reason to believe it was true.  My client told me it
> wasn't.
>
> Q.  An in fact, you presented witnesses to attack Ms. Hook's characterization
> of your client in that manner?
>
> A.  That's correct. . . .

Id. at 76-77.   The record reveals that Mayo presented testimony from another of Hook's

sisters who indicated that Mayo had nothing to do with the other sister's death. Doc. 18-1, Respondents' Exhibit A at 47.  The trial court ultimately determined that the testimony should have been redacted and gave a curative instruction. Document 18-2, Respondents' Exhibit B at 30 and 116-117.  The trial court and the Superior Court both concluded that in light of that curative instruction Mayo suffered no prejudice. Id.

The Court of Appeals for this circuit has noted that "[w]here evidence of a defendant's prior bad acts is admitted, a defendant's interests are protected by a limiting instruction, which mitigates the possibility of prejudice." Albrecht v. Horn, 485 F.3d 103, 128 (3d Cir. 2007).  In this case, the trial court gave a curative instruction even though defense counsel's strategy was to show that Hook had a deep seated bias towards Mayo as a result of her belief that Mayo was responsible for her sister's death.  Mayo had the benefit of defense counsel's strategy as well as the court's instruction to the jury that they not consider the testimony as it related to Mayo.

Mayo has failed to show that the decision of the state trial court and Pennsylvania Superior Court finding the curative instruction sufficient to cure any prejudice was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States or that the trial court's ruling resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, this court finds that Mayo's claim that his trial counsel was guilty of ineffective assistance for failing to request that Hook's testimony be redacted is without merit.

Mayo's third claim is that trial counsel was ineffective for failing to object to the trial court's alleged advice regarding the admissibility of Mayo's conviction for possessing an instrument of a crime.  One significant problem with this argument is that the trial court never advised Mayo that if he took the stand that the court would allow the District Attorney to question him regarding his prior conviction for possessing an instrument of a crime.  More importantly, however, is the fact that defense counsel testified at the post-conviction proceeding that the decision to not have Mayo testify was part of his trial strategy because he felt the case was proceeding in Mayo's favor and that the witnesses against Mayo were not credible. Doc. 18-2, Respondents' Exhibit B at 79 and 150.   Defense counsel also testified that Mayo agreed with that trial strategy. Id.   Additionally, it is important to point out that Mayo's argument is premised on his claim that at the time of trial he had no *crimen falsi* convictions which could be used to attack his credibility if he testified. This claim is erroneous.   At the time of trial in March, 2010, Mayo was serving a 6 to 20 year sentence for robbery.  Although the conviction occurred in 1993, it was still admissible in 2010 under Pennsylvania Rule of Evidence 609(b) which states in pertinent part as follows:

> (b) Limit on Using the Evidence After 10 Years.  This subdivision (b) applies if more than 10 years have passed since the witness's conviction <u>or release from confinement for it, whichever is later</u>.

Pa.R.E. 609(b)(emphasis added); <u>see</u> <u>also</u> <u>Commonwealth v. Harris</u>, 884 A.2d 920, 924-925 (Pa. Super. 2005)(twenty year old convictions for robbery and burglary were admissible to impeach defendant if he testified; robbery and burglary were considered *crimen falsi* and convictions for those offenses were admissible for impeachment purposes because 10-year period for convictions to be admissible dates from the release from prison on those prior

*crimen falsi* convictions which had not expired when defendant committed the new offenses); Commonwealth v. Trippet, 932 A.2d 188, 199-200  (Pa. Super. 2007)( where the date of conviction or last date of confinement is within 10 years of the trial, evidence of conviction of a crimen falsi is per se admissible).  On March 12, 2008, Mayo was released on parole from the robbery conviction and was only on the street approximately three months when he committed a new offense and his parole subsequently revoked.  Consequently, Mayo's robbery conviction was admissible to attack Mayo's credibility and if defense counsel advised Mayo not to testify that advice did not fall below an objective standard of reasonableness.

Mayo has failed to show that the decision of the state trial court and Pennsylvania Superior Court finding that the alleged erroneous advice given to him regarding the admissibility of his prior convictions had no impact on his decision not to testify was contrary to, or involved and unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States or that the trial court's ruling resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Mayo's third claim is without merit.

Mayo's fourth claim of ineffective assistance of counsel relating to Corporal Wiederhold was never raised in a state court proceeding.  Consequently, the question becomes whether it was procedurally defaulted and, if so, whether there is cause and prejudice to excuse the default.

Mayo's fourth claim is that his trial counsel failed to object to the testimony of Corporal Wiederhold.  Mayo contends that the District Attorney did not identify Corporal Wiederhold as a witness or provide any discovery relating to Corporal Wiederhold prior to

trial.  The first issue the court has to address is whether or not there is cause for Mayo's failure to raise the issue in state court.  Mayo contends that the ineffective assistance of the attorney who represented him during the state post-conviction proceedings establishes the cause for his failure to raise the issue.  In light of <u>Martinez</u>, *supra*,  such ineffective assistance could establish the cause prong under the test to excuse a procedural default.[5]

However, Mayo's claim is unavailing because he cannot establish prejudice or a fundamental miscarriage of justice.  Mayo claims that prior to trial he was not provided with the substance of Corporal Wiederhold's testimony and  his counsel was ineffective for failing to object to Corporal Wiederhold's testimony.  Doc. 22, Petitioner's Traverse, p. 74. He further contends that he was prejudiced because if counsel had objected "there is a reasonably probability that Wiederhold's testimony detailing his involvement in [Mayo's] case would not have been allowed." <u>Id.</u> at 75.  A showing of prejudice requires evidence of something that "worked to [Mayo's] actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." <u>Murray</u>, 477 U.S. at 488.[6]  In this case Mayo has

---

[5]In essence we have two ineffective assistance of counsel claims raised: (1) a claim against Mayo's post-conviction attorney who filed the PCRA petition and (2) a claim against his trial counsel.   In order for Mayo to establish ineffective assistance of either trial or PCRA counsel Mayo is requited to meet the requirements of <u>Strickland</u>: show "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." <u>Id.</u> at 687; <u>accord</u> <u>Deputy v. Taylor</u>, 19 F.3d 1485, 1493 (3d Cir.1994).

[6]Mayo has not claimed that Corporal Wiederhold's testimony was exculpatory and does not raise a federal constitutional claim under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). In <u>Brady,</u> the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." <u>Id.</u> at 87.   In this case the evidence which the prosecution allegedly failed to disclose prior to trial was inculpatory.  There is no federal constitutional <u>Brady</u> claim presented relating to the alleged non-disclosure of the information that Corporal Wiederhold testified about at trial.

not claimed that he was unaware of some involvement of Corporal Wiederhold in his case.

Corporal Wiederhold was mentioned in the affidavit of probable cause prepared by Captain

Wojciechowsky. Doc. 18-3, Respondents' Exhibit C at 9.  Furthermore, the claim that the trial

court would have excluded the testimony of Corporal Wiederhold is pure speculation as well

as a matter of state law relating to discovery in criminal cases, and he has not indicated how

his counsel's cross-examination of Corporal Wiederhold was defective as a result of the

alleged late disclosure that Corporal Wiederhold would be a witness at trial.  The standard

is that there be "actual and substantial disadvantage" which infects "the entire trial with error

of constitutional dimensions."[7]   Murray, 477 U.S. at 488.  Mayo has not proffered facts

establishing such error.  He has not established that if he had received pretrial notice of

Corporal Wiederhold's testimony that there is a  reasonable probability the result of the trial

would have been different.   At trial Captain Wojciechowsky testified regarding his

involvement with Reaves, the confidential informant, and his observations of the drug

transaction.  Corporal Wiederhold's testimony was merely corroborative of the testimony of

Reaves and Captain Wojciechowsky. Mayo has not established prejudice. Moreover, he has

not demonstrated his actual innocence such that a lack of review by the court would

constitute a fundamental miscarriage of justice.  See McCandless, 172 F.3d at 260.

---

[7]Even under Brady where there is an alleged constitutional violation for failing to
reveal exculpatory evidence a petitioner in order to establish the prejudice to excuse a
procedural default has to show that the evidence was "material."  In the Brady context
"material" is defined as "only if there is a a reasonable probability that, had the evidence
been disclosed to the defense, the result of the proceeding would have been different."
Johnson v. Folino, 705 F.3d 117, 128 (3d Cir. 2013)(quoting U.S. v. Bagley, 473 U.S.
667,682 (1985)(internal quotation marks omitted)).

Consequently, he is precluded from pursuing federal habeas corpus relief with regard to the fourth claim.

>      An appropriate order will follow.


>                    /s/ A. Richard Caputo
>                    A. RICHARD CAPUTO
>                    United States District Judge


Dated: December 30, 2014